IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **VICTORIA CONWAY** | **PLAINTIFF** |
| v. | CAUSE NO. 1:20-cv-107-LG-MTP |
| **BILOXI PUBLIC SCHOOL DISTRICT, SHANE SWITZER, ARTHUR MCMILLAN, and DIXIE ELEUTERIUS** | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

**BEFORE THE COURT** is the [85] Motion for Partial Summary Judgment filed by Defendant Biloxi Public School District. After due consideration of the parties' submissions, the record in this matter, and the applicable law, the Court finds that the Motion should be denied.

### BACKGROUND

In this case, Plaintiff Victoria Conway claims that the Biloxi Public School District ("BPSD" or "the School District") violated her federal and state rights when it allegedly terminated or failed to renew her employment following her reports of illegal financial activity within the organization. (Pl.'s 2d Am. Compl., ECF No. 60). Plaintiff also sues three individual defendants under theories of malicious interference with employment and civil conspiracy.[1] (*Id.*).

---

[1] A fourth individual defendant, Jim Wallis, was named in the original Complaint but removed in the First Amended Complaint. (Compl., ECF No. 1; Pl.'s 1st Am. Compl., ECF No. 3).

Plaintiff alleges that she was an administrative assistant in the School District's Child Nutrition Department for ten years. (*Id.* ¶ 4). Defendant McMillan was the Superintendent of the School District, and Defendant Switzer was employed as an administrative and financial officer. (*Id.* ¶¶ 6-7). Plaintiff alleges that she learned of various financial improprieties and misappropriations in the School District during her employment, which she reported to her mother, also a School District employee. (*Id.* ¶ 6). Specifically, she believed School District assets had been used privately for the wedding of McMillan's daughter. (*Id.*). The complaint was related to a School Board member, who transferred it to the School District. (*Id.* ¶¶ 6-7). Plaintiff and her mother also reported the allegations to the Mississippi Office of the State Auditor, resulting in an investigation. (*Id.* ¶ 8).

Thereafter, Plaintiff alleges that Defendants McMillan and Switzer retaliated by "caus[ing]" her immediate supervisor, Defendant Eleuterius, to begin a pattern of harassment, which included refusing to speak to her, slamming doors, tossing paperwork, and shutting her out of offices. (*Id.* ¶ 9). This behavior allegedly compelled Plaintiff to undergo psychological treatment. (*Id.*). In November 2018, Plaintiff penned a letter to the School Board complaining of the mistreatment, which resulted in media coverage. (*Id.* ¶ 10).

Plaintiff alleges that in July 2019 she learned through her health care insurer that her at-will employment had been terminated.[2] (*Id.* ¶ 12). She

---

[2] Plaintiff previously alleged that her employment was terminated through

maintains that the School District made this decision due to her reporting of illegal activity and letter. (*Id.*). Against the School District, Plaintiff asserts (1) retaliation against Plaintiff for exercise of her First Amendment rights, (2) a violation of the *McArn* doctrine, and (3) a violation of the Mississippi whistleblower statute and its own school policy. (*Id.* ¶ 14). Plaintiff also blames the individual Defendants, against whom she asserts causes of action for malicious interference with employment and civil conspiracy. (*Id.* ¶¶ 15-16.).

On March 22, 2022, Defendant Biloxi Public School District filed a [85] Motion for Partial Summary Judgment, which essentially advances a legal argument that Plaintiff's First Amendment retaliation claim should be dismissed because her speech was not a matter of public concern. Plaintiff [89] responded, and Defendant [91] replied. The issues have been fully briefed and are now ripe for disposition by the Court.

## DISCUSSION

### I.   MOTION FOR SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its

---

nonrenewal of her school contract, but it appears she changed this allegation in response to other Defendants' attacks. (1st Am. Compl., ¶ 12, ECF No. 3; 2d Am. Compl., ¶ 12, ECF No. 60).

3

opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

## II.   BILOXI PUBLIC SCHOOL DISTRICT'S MOTION

Plaintiff alleges that the School District is liable "for retaliating against Plaintiff for exercise of her rights protected by the First Amendment."[3] (Pl.'s 2d Am. Compl. ¶ 14, ECF No. 60). To succeed on her First Amendment retaliation

---

[3] Plaintiff also alleges wrongful discharge under Mississippi state law in violation of the *McArn* doctrine, Miss. Code Ann. § 25-9-173, and the School District's Whistleblower Protection Policy. (Pl.'s 2d Am. Compl., ¶¶ 14, 17, ECF No. 60).

4

claim, Plaintiff must show that "(1) [s]he suffered an adverse employment action; (2) [s]he spoke as a citizen on a matter of public concern; (3) [her] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Jones v. Hosemann*, 812 F. App'x 235, 239 (5th Cir. 2020). The School District argues that Plaintiff was not engaged in constitutionally protected speech. (Mem. L. Supp. Mot. Part. Summ. J., 1-4, ECF No. 85).

### 1. Constitutionally Protected Speech

"Whether speech is protected by the First Amendment is a question of law to be determined by the court," and "[a] public employee's speech is entitled to judicial protection under the First Amendment only if it addresses a matter of 'public concern.'" *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991) (citations omitted). "Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (internal quotations omitted)).

The capacity in which the plaintiff spoke is also relevant; the Fifth Circuit distinguishes between "speech that is 'the kind of activity engaged in by citizens who do not work for the government,' . . . and activities undertaken in the course of performing one's job." *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007). "To rise to the level of public concern, the speech must have been made

5

primarily as a citizen rather than as an employee." *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991) (citing *Thompson v. City of Starkville*, 901 F.2d 456, 465 (5th Cir. 1990)).  Further, it is possible to have a case of "mixed speech."  Such is "a case in which an employee's speech contains elements of both personal and public concern."  *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005).  "All speech arising from 'mixed motives,' however, is not automatically protected; the speaker must have spoken *predominantly* 'as a citizen' to trigger First Amendment protection."  *Dodds*, 933 F.2d at 274.  Moreover, "[t]he existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern."  *Id.* (citing *Thompson*, 901 F.2d at 463-64).

"There is perhaps no subset of 'matters of public concern' more important than bringing official misconduct to light."  *Davis v. Ector Cty., Tex.*, 40 F.3d 777, 782 (5th Cir. 1994).  Particularly, "'[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law, and seeing that public funds are not purloined.'"  *Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir. 2006) (quoting *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986)).  The Supreme Court has considered a teacher's criticism of the allocation of school board funds between academic and athletic departments a matter of public concern. *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563, 571-72 (1968).

For speech to involve a matter of public concern, a court generally must evaluate the content, form and context of a given statement. *See Stotter v. Univ. of Tex.*, 508 F.3d 812, 825 (5th Cir. 2007). The Court shall now apply these standards to the speech at issue in this case.

### 2. Plaintiff's Speech

The evidence on this [85] Motion for Partial Summary Judgment essentially consists of a letter written by Plaintiff to the Biloxi School Board. Plaintiff has alleged in this lawsuit that she was "the administrative assistant in the Child Nutrition Department" of the School District. (2d Am. Compl., ¶ 4, ECF No. 60). She claims that she reported financial misappropriations both "to her mother . . . and to a trusted member of the School Board." (*Id.* ¶ 6). Plaintiff claims that she assisted her mother in notifying the State Auditor. (*Id.* ¶ 8). Finally, Plaintiff claims that she "wrote a letter of complaint on November 13, 2018, describing the harassment she was suffering because of her reporting of illegal activity." (*Id.* ¶ 10). Writing the letter, she alleges, was "not part of her ordinary job activities." (*Id.* ¶ 11). The letter is attached to the Complaint and is directed to the Biloxi School Board. (*See* Letter, ECF No. 60-3).

Defendant focuses on Plaintiff's letter to the Biloxi School Board and in doing so denies that the letter relates to a matter of public concern. (*See id.*). In the letter, Plaintiff describes herself as "a whistleblower" and claims that she saw "things that set off alarms that were not only unethical but illegal." (*Id.*). The

7

majority of the letter describes what she perceives as retaliatory harassment from her supervisors in response to her letter or report to the State Auditor of misappropriations of school funds. (*Id.*).

With respect to the content of the letter, the reports of retaliatory conduct largely involve Plaintiff's private employment. But the subject of misappropriation of school-related funds is clearly within the realm of public concern; indeed, the subject is at its "zenith." *See Modica*, 465 F.3d at 181; *see also Salge*, 411 F.3d at 186 ("'If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature.'") (quoting *Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 366 (5th Cir. 2000), *abrogated on other grounds as stated in Cuvillier v. Taylor*, 503 F.3d 397, 401 n.4 (5th Cir. 2007)). The Court cannot say that the letter is wholly outside public concern. *See Dodds*, 933 F.2d at 273 ("The existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern.").

Further, regarding whether Plaintiff spoke as an employee or a citizen, there is no evidence that writing such letters is part of Plaintiff's ordinary, official job duties. It is true that Plaintiff learned of the alleged misappropriation *through* her employment. However, that she learned of the relevant conduct through her administrative duties does not transform her speech into an official job-related activity. The Supreme Court has stated: "the mere fact that a citizen's speech

8

concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane v. Franks*, 573 U.S. 228, 240 (2014). "It bears emphasis that our precedents dating back to *Pickering* have recognized that speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Id.* At most, the inclusion of both private matters and public matters renders Plaintiff's letter "mixed speech." "Mixed speech cases are perhaps the most difficult subset of employee speech cases to adjudicate. Because the employee admittedly speaks from multiple motives, determining whether she speaks as a citizen or employee requires a precise and factually-sensitive determination." *Kennedy*, 224 F.3d at 367. The Court will therefore assess the form and context of the letter to determine its nature as a matter of private or public concern.

Formally, Plaintiff's speech is contained in a letter to the school board. Where a plaintiff wrote an internal memorandum criticizing school funding of his athletic department, his speech was rendered pursuant to his official duties and thereby unprotected. *Williams*, 480 F.3d at 693-94. That case noted specifically that the plaintiff "needed to consult with his superior about his budget" and that he did not "wr[i]te to the local newspaper or school board with his athletic funding concerns." *Id.*; *see also Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 817 (5th Cir. 2000) (holding that internal memoranda authored by the plaintiff to

9

exonerate herself of charges that she misused a student activity fund for personal benefit was "a matter of pure personal concern"). In *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006), the Supreme Court made a similar distinction, noting an earlier case where a "letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day." *Id.* (citing *Pickering v. Bd. of Ed. of Township High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563 (1968)); *see also Modica*, 465 F.3d at 181 ("The form of Modica's speech, a letter to a state representative, also militates in favor of protection."). Hence, Plaintiff's position is bolstered by the fact that she addressed the school board in the letter rather than her supervisors, superiors or more proximate authorities.

Contextually, Plaintiff's letter to the School Board either ignited or fueled a public controversy regarding the alleged misallocation of funds, and her letter was reproduced in the media coverage of the incident. (*See* WLOX News Article, ECF No. 60-4). "[S]peech made against the backdrop of ongoing commentary and debate in the press involves the public concern." *Kennedy*, 224 F.3d at 373 (citing *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 191 (5th Cir. 1988) (holding speech to relate to the public concern where "the statements in the letter must be seen in the context of a continuing commentary that had originated in the public forum of the newspaper.")); *Moore v. City of Kilgore, Tex.*, 877 F.2d 364, 371 (5th Cir. 1989) ("The media in this case approached Moore, asked him for his comments, and printed his responses. The caldron was still simmering concerning the issue. . . . Thus, our

10

analysis of the context in which Moore's speech was uttered also leads us to conclude that his speech involves a matter of public concern."). Although Plaintiff did not directly submit her letter to the press, that her letter was nevertheless subject to media coverage supports her position that it relates to matters of public concern. *See Kennedy*, 224 F.3d at 374. Hence the content, form and context of the letter at the least create a genuine issue of material fact as to whether it involves the public concern.

Moreover, Plaintiff responds that her speech is not limited to the letter to the school board, but also includes her speech to the State Auditor regarding the alleged misappropriation of funds. Defendant argues that Plaintiff "did not actually author the letter/report to the State Auditor; her mother (Lee Ann Dubaz and fellow School District employee) did." (Def.'s Reply Pl.'s Resp. Opp. Def.'s Mot. Part. Summ. J., at 3, ECF No. 91). However, the Court does not have requisite summary judgment evidence to determine the authorship of the document. In an affidavit, Plaintiff states that she "assisted" her mother in preparing the letter or report to the State Auditor, and there is no evidence to contradict this attestation. (Pl.'s Aff. ¶ 4, ECF No. 89-1). Plaintiff's letter briefly seems to describe her mother as the primary author of the letter or report to the State Auditor (*see* Letter, ECF No. 60-3), but this is, in the light most favorable to Plaintiff, an ambiguity which does not contradict the possibility that she coauthored the letter or report. Moreover, the

11

parties have not submitted this report to the Court. Hence, the Court cannot grant summary judgment to Defendant on such limited evidence.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [85] Motion for Partial Summary Judgment, filed by Defendant, Biloxi Public School District, is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 2nd day of August, 2022.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE